# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Dennis Elvin Cervantes-Pavon, Petitioner.

Appellate Case No. 2017-001910

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Kristi Lea Harrington, Circuit Court Judge

---

Opinion No. 27872
Heard January 31, 2019 – Filed March 27, 2019

---

## REVERSED AND REMANDED

---

Appellate Defender Susan Barber Hackett, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General Susannah Rawl Cole, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, all for Respondent.

---

**JUSTICE HEARN:** We granted Dennis Cervantes-Pavon's petition for a writ of certiorari to determine whether the court of appeals erred in affirming the circuit court's denial of immunity from prosecution under the Protection of Persons and Property Act, (the Act) S.C. Code Ann. §§ 16-11-410 to 450 (2015). *State v. Cervantes-Pavon*, Op. No. 2017-UP-258 (S.C. Ct. App. filed June 28, 2017). We write today to clarify several points regarding the Act and remand for a new immunity hearing.

## FACTUAL BACKGROUND

Cervantes-Pavon was indicted for murdering Raymond Muniz by stabbing him with a sheetrock saw at their workplace. Both men worked on a construction project at the Belk department store in Mount Pleasant. Prior to trial, Cervantes-Pavon moved to dismiss the indictment, arguing he was immune from prosecution under the Act.

At the immunity hearing, Herbie Evans testified that on August 13, 2014, he was working as a superintendent on the Belk project and became aware of a problem between Muniz and Cervantes-Pavon. Cervantes-Pavon approached Evans and stated Muniz was picking on him. Evans spoke with Muniz and informed him that he would not tolerate any conflicts between employees and would send them home if one occurred. Evans did not witness any interactions between Muniz and Cervantes-Pavon on that day.

José Somosa, through an interpreter, testified he worked with Muniz and Cervantes-Pavon on the Belk project. Somosa recalled that the day before the stabbing, Muniz had removed his shirt and attempted to fight Cervantes-Pavon, who refused. The next day, Somosa was working as Cervantes-Pavon's helper on the project by staying on the ground while Cervantes-Pavon worked on a ladder. According to Somosa, each time Muniz walked by Cervantes-Pavon, Muniz would say the two men should fight and Cervantes-Pavon would respond that he didn't want any trouble.

Somosa testified that at the end of the workday, Muniz again wanted to fight Cervantes-Pavon. This time, Cervantes-Pavon "got angry," came down from the ladder, and "later went over to the tools and grabbed that steel thing." Somosa clarified the "steel thing" was a sheetrock saw approximately 10 inches long. Somosa stated Cervantes-Pavon "grabbed a pipe," Muniz "grabbed like a metal thing for framing," and the two "went at each other." Both men then dropped the metal objects and began to fight hand-to-hand, with Muniz, the taller man, holding

Cervantes-Pavon around his neck. Somosa then saw Cervantes-Pavon remove the saw from his waist underneath his shirt and stab Muniz once. Thereafter, both men ran outside. According to Somosa, Muniz started the fight.

The State predominantly cross-examined Somosa with two statements he had previously given to police. In those statements, Somosa reported, among other things, that he did not see the stabbing, Muniz and Cervantes-Pavon had engaged in a fist fight the week before over a broom, the fight occurred in Muniz's work area, and the two men were wrestling when Muniz was stabbed. Somosa expressed dissatisfaction with his prior statements, which were recorded in English, claiming the police "forc[ed] him to say things that [he] did not say" because the officer "spoke more English than Spanish," and Somosa told him he "wasn't understanding."

Cervantes-Pavon also testified through an interpreter. He stated his problems with Muniz started when Muniz snatched a broom from him and continued when he attempted to tell his boss about the incident. Muniz continued to verbally assault Cervantes-Pavon by using homophobic slurs and threatening to kill him. On August 13, Muniz threatened him throughout the day, including with a pipe. According to Cervantes-Pavon, he also picked up a pipe to defend himself, but Muniz struck him in the stomach and jaw. He lost possession of the pipe, Muniz dropped his pipe, and Muniz held him around the neck, strangling him. Cervantes-Pavon stated he grabbed his saw and stabbed Muniz once in an attempt to stop him.

Cervantes-Pavon argued he was entitled to immunity because he was in his place of business, was not at fault in bringing about the conflict, and he had a reasonable fear of imminent death or bodily harm. He contended he picked up the pipe to defend himself and was unsuccessful, as he was injured. Cervantes-Pavon asserted Muniz, the larger man, wrapped his arm around Cervantes-Pavon's neck, and Cervantes-Pavon stabbed Muniz in order to be able to extricate himself from the situation. Cervantes-Pavon pointed to the prior incidents between the two men as contributing to his reasonable fear of death or bodily harm.

The State argued the issue was a "clear question of fact" regarding self-defense, noting Cervantes-Pavon stabbed Muniz when Muniz was unarmed. The State contended the evidence presented did not rise to a preponderance of the evidence that Cervantes-Pavon acted in self-defense.

The circuit court denied Cervantes-Pavon's motion. The court noted the Act grants immunity if a movant proves the factors by a preponderance of the evidence. The circuit court then determined:

Based upon the testimony presented today I deny the defendant's request for immunity based upon the Protection of Persons and Property Act. The intent of the Act is for defensive not offensive protections. There must be an absence of aggression. The testimony that has been presented today is that the boss Mr. Evans had told both of them to cut it out, that there had been a mutual confrontation. Both the defendant and the victim had discarded the tools according to Mr. Somosa and at the time the victim was stabbed the victim was not armed and that the witness believed that the victim and defendant were merely wrestling.[1]

The issue of self-defense presents itself as a jury question. I am denying your motion. I do not believe the testimony rises to a level beyond a preponderance of the evidence to grant the immunity designed by the legislature to protect someone from criminal prosecution. I'll note your exception to my ruling.

After a three-day jury trial, Cervantes-Pavon was convicted of murder, and the circuit court sentenced him to 30 years' imprisonment. Cervantes-Pavon appealed, challenging the circuit court's denial of immunity because the circuit judge applied the wrong legal standard and reached the wrong conclusion. The court of appeals affirmed in an unpublished opinion pursuant to Rule 220(b), SCACR. We granted Cervantes-Pavon's petition for a writ of certiorari to review the decision.

**ISSUE**

Did the court of appeals err in affirming the circuit court's denial of immunity under the Act?

---

[1] Although our review today is limited primarily to legal issues, we note that this characterization of Somosa's testimony is not supported by the record. Somosa never stated he believed the parties were "merely wrestling." Rather, he acknowledged he told authorities in a previous statement that Muniz and Cervantes-Pavon began wrestling after the pipes were discarded and that they were wrestling when Muniz was stabbed. Somosa never opined on the level of combat this wrestling presented in his prior statement, and he testified during the immunity hearing that Muniz's arms were around Cervantes-Pavon's neck when the two men were fighting hand-to-hand.

## STANDARD OF REVIEW

Circuit courts utilize pretrial hearings to determine whether a defendant is entitled to immunity under the Act, employing a preponderance of the evidence standard. *State v. Manning*, 418 S.C. 38, 43, 791 S.E.2d 148, 150 (2016). This Court reviews an immunity determination for abuse of discretion. *Id*. at 45, 791 S.E.2d at 151. A circuit court abuses its discretion when its ruling is based on an error of law, or when grounded in factual conclusions, is without evidentiary support. *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016).

"Section 16-11-450 provides immunity from prosecution if a person is found to be justified in using deadly force under the Act." *State v. Curry*, 406 S.C. 364, 371, 752 S.E.2d 263, 266 (2013). To warrant immunity, a movant must show he was without fault in bringing on the difficulty, he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, and a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. *Id*. n.4. He may also show that he actually was in imminent danger and the circumstances would have warranted a man of ordinary firmness and courage to strike the fatal blow to save himself from serious harm or death. *Id*. Section 16-11-440(C) provides the movant has no duty to retreat if, at the time of the attack, he was in a place where he has a legal right to be.

## DISCUSSION

Cervantes-Pavon first argues the circuit court erred in denying him immunity under the Act by applying the wrong legal standard. He contends the court required him to prove his immunity "beyond a preponderance of the evidence," which warrants reversal. Cervantes-Pavon further asserts that, viewing the evidence presented under the proper standard, he should have been granted immunity. He argues he was not at fault in bringing about the difficulty, had no duty to retreat in his place of business, and feared losing his life or imminent serious injury because Muniz was choking him.

The State responds, contending first the circuit court merely misspoke in stating the evidence did not rise beyond a preponderance. The State further argues the circuit court did not abuse its discretion in denying immunity because Cervantes-Pavon was the armed initial aggressor against an unarmed Muniz in mutual combat. The State notes Somosa testified that Cervantes-Pavon became angry with Muniz's comments, armed himself with a pipe and saw, and engaged in deadly combat with Muniz. According to the State, even if Cervantes-Pavon was not the aggressor, the

combat was at least mutual, which makes a plea of self-defense unavailable. The State argues the fact that Muniz was unarmed when Cervantes-Pavon stabbed him is sufficient by itself to uphold the denial of immunity, citing *Manning*. The State contends Cervantes-Pavon did not have a reasonable fear of death or great bodily injury because he was not harmed during his prior fight with Muniz, had refused Muniz's invitations to fight previously, and testimony demonstrated the two were merely wrestling when the stabbing occurred.

In denying immunity, the circuit court relied on the fact that Muniz was not armed when Cervantes-Pavon stabbed him. The State relies on our decision in *Manning* to argue this is sufficient to uphold the court's decision. While we did ultimately affirm a denial of immunity in *Manning* and noted the victim was unarmed, the issue before us was only whether the court of appeals erred in requiring the trial court to conduct a complete testimonial evidentiary hearing before ruling on immunity. *See Manning*, 418 S.C. at 43, 791 S.E.2d at 150. Moreover, *Manning* is distinguishable because there was no contact between the victim and the defendant in that case, whereas here, Cervantes-Pavon alleged Muniz was strangling him. *See id*. at 45, 791 S.E.2d at 151. Further still, both parties here were armed with metal pipes at the outset of the fight that ultimately resulted in the stabbing, removing it from the realm of their past encounters that ended with no serious injuries. Accordingly, while the fact a victim is unarmed is a relevant consideration under the Act, it does not automatically prohibit immunity, as the State contends. Similarly, the fact a defendant armed himself does not, in and of itself, make him the aggressor in a given confrontation. *See Jones*, 416 S.C. 283, 786 S.E.2d 132 (affirming a circuit court's grant of immunity where movant armed herself with a knife for protection before victim grabbed and shook her).

We next turn to the circuit court's finding that the immunity issue presented a jury question. The Act requires the circuit court to determine whether a movant is entitled to immunity. *See State v. Duncan*, 392 S.C. 404, 709 S.E.2d 662 (2011) (setting forth the procedure, burden of proof, and standard of review for an immunity determination). Some cases in which a defendant seeks immunity under the Act may present a "quintessential jury question" regarding self-defense. Such was the case in *Curry*, where the circuit court denied immunity[2] because testimony of the victim's and defendant's witness varied substantially, the defendant testified he pulled a gun because he believed victim was lunging at him but the evidence showed victim was

---

[2] The defendant in *Curry* moved for immunity under the Act at the directed verdict stage. *Curry*, 406 S.C. at 369, 752 S.E.2d at 265.

shot six times in the back, and defendant told investigators he "blacked out" during the shooting. *Curry*, 406 S.C. at 369, 752 S.E.2d at 265. But just because conflicting evidence as to an immunity issue exists does not automatically require the court to deny immunity; the court must sit as the fact-finder at this hearing, weigh the evidence presented, and reach a conclusion under the Act. Of course, at the conclusion of any given hearing, if the circuit court determines the movant has not met his burden of proof as to immunity, the case will go to trial, and the issue of self-defense may—depending upon the evidence presented at trial—be presented to the trial jury.

We believe the circuit court's immunity ruling was controlled by multiple errors of law[3], and combined with the court's erroneous characterization of Somosa's testimony, this amounted to an abuse of discretion. While the State contends there is evidence from the immunity hearing to support the court's ruling, we are unable to discern a legally correct basis on which the court relied. For example, the circuit court correctly noted that a movant must demonstrate an absence of aggression, but the record contains no evidence that Cervantes-Pavon initiated the fight. The issue of mutual combat presents a closer question. However, it is not clear this was a basis for the ruling, as the court merely noted there had been a "mutual confrontation" and gave no further factual findings or conclusions of law on this issue.[4] The circuit court appears to have based its ruling on the findings that the parties had discarded their metal objects, Cervantes-Pavon was armed while Muniz was not, and the two men were merely wrestling when the stabbing occurred. Because these were erroneous bases on which to deny immunity, we reverse the circuit court's decision on this issue and remand for a new hearing.

To be clear, we are not ordering a new trial, only a new hearing to determine whether Cervantes-Pavon is entitled to immunity under the Act. In addition, although the State cited to trial testimony to support the court's rulings in its brief,

---

[3] We also note the court's error in stating the Act required Cervantes-Pavon to prove he was entitled to immunity "beyond" a preponderance of the evidence, instead of "by" a preponderance of the evidence. While we readily understand the court may have simply misspoken given its correct recitation of the standard immediately before the erroneous statement, this is one of several errors of law that contribute to our ultimate conclusion.

[4] While the Act does not require a written order upon an immunity determination, specific findings of fact and conclusions of law are critical to reviewing courts, particularly given the gravity of the circumstances these cases necessarily involve.

we agree with our sister state of Georgia that, "while the trial court's pretrial immunity ruling and the jury's verdict on a claim of self-defense may apply the same statutory justification standard, the court's ruling must be based solely on the evidence presented at a pretrial hearing, while the jury's verdict must be based solely on the evidence presented at trial, which may be considerably different." *Sifuentes v. State*, 746 S.E.2d 127, 131 n.3 (Ga. 2013). Consequently, we have limited our review to the evidence presented at the immunity hearing. Likewise, the circuit court is to rely only upon evidence presented at the new hearing on remand.

**REVERSED AND REMANDED**.

**BEATTY, C.J., FEW, JAMES, JJ., and Acting Justice Paul E. Short, concur.**